UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | | |
|---|---|---|
| OCEAN FARM GEAR & SERVICES LLC, *doing business as* FLIPFARM USA, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | No. 2:26-cv-00368-LEW |
| | ) | |
| FLIPFARM SYSTEMS LIMITED, | ) | |
| | ) | |
| Defendant | ) | |

**ORDER ON MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

The matter is before the Court on the Motion for Temporary Restraining Order and Preliminary Injunction filed by Plaintiff Ocean Farm Gear & Services LLC (ECF No. 3). The Court deferred Plaintiff's request for an *ex parte* restraining order and instead ordered service and expedited briefing.[1] The matter is now fully briefed and, for reasons that follow, Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction is now fully denied.

**BACKGROUND**

According to the complaint and the related record, Plaintiff Ocean Farm Gear & Services LLC ("OFG") is a Maine limited liability company that has presented itself online as FlipFarm USA. It has its principal place of business in Portland, Maine. OFG is the

---

[1] Defendant FlipFarm Systems Limited has filed a combined Motion to Quash Ineffective Service and Motion to Dismiss (ECF No. 19). I will address these requests through a later order when they are under advisement.

creation of Keith Butterfied. Defendant FlipFarm Systems Limited ("FlipFarm") is a New Zealand company that manufactures the FlipFarm oyster-farming equipment system and distributes that system through distributors in the United States and other countries. For several years, OFG sold and serviced FlipFarm products for aquaculture farms located on the east coast and gulf coast of the United States.

The parties' relationship began in November 2019, when Keith Butterfield approached Aaron Pannell, FlipFarm's Managing Director and Founder, about adapting the FlipFarm system for his oyster farm in Maine. In time, Keith Butterfield went from a customer to someone who invested in and grew a book of business for FlipFarm products. FlipFarm supplied inventory and supported Butterfield's efforts to distribute FlipFarm's products via resale and to serve end users of its system. In March 2020, Butterfield placed his first large wholesale order with FlipFarm, placing the order through his new limited liability company, OFG. By September 2020, FlipFarm had authorized Butterfield and OFG to arrange for the manufacture of equipment in the United States. By October 2020, FlipFarm authorized Butterfield and OFG to use FlipFarm's logo on their website. Gradually, business expanded due to the efforts of Butterfield. FlipFarm would eventually refer to Butterfield and OFG as its "US East coast distributor." Compl. Ex. H.

Keith Butterfield received a diagnosis of terminal cancer in November 2025. Recognizing that his life would be ending and desiring to preserve the operations of OFG for his family, Keith Butterfield requested that FlipFarm enter into a formal distributorship agreement that would establish on paper that OFG would have exclusive distribution rights to the entire eastern US seaboard unless FlipFarm exercised a "buyout option" that would

compensate Butterfield's family for his efforts building FlipFarm's US east coast market. Compl. Ex. P. On March 19, 2026, the day before his death, Keith Butterfield executed a notarized Transfer-on-Death Beneficiary Designation that transferred his entire 100% membership interest in OFG to his brother, Kevin Butterfield, effective on his death. Compl. Ex. S.

On March 28, 2026, FlipFarm informed Kevin Butterfield that it did not intend to formalize a distributorship agreement and that it intended to deal with the US east coast customer base directly rather than through OFG. FlipFarm set forth terms on which it would fulfill and compensate OFG for existing orders and inventory. As alleged, FlipFarm's subsequent actions or inactions have undermined OFG's ability to fulfill orders and serve its existing customers, resulting in alleged damages and harm to OFG's goodwill with its customer base. In July 2026, FlipFarm provided OFG's counsel with a 120-day notice of termination of the parties' relationship. Compl. Ex. U. FlipFarm's products account for nearly 100 percent of OFG's business.

Although FlipFarm benefitted from and valued its relationship with Keith Butterfield, it does not intend to cement a perpetual relationship with OFG in the absence of Keith Butterfield's participation. Keith Butterfield's knowledge and experience of oyster farming with the FlipFarm system made him particularly suited to a distribution and service partnership, according to FlipFarm. FlipFarm contends that OFG under Kevin Butterfield is not similarly suited.

OFG asserts claims under Maine law, specifically, violation of Maine Franchise Laws, 10 M.R.S. §§ 1361-1370, and the Maine Dealership Act, 10 M.R.S. §§ 1285-1298;

breach of contract; breach of the implied covenant of good faith and fair dealing; promissory estoppel; fraudulent misrepresentation; unjust enrichment; tortious interference with contractual relations and prospective business relations; and a claim for declaratory judgment. Through its Motion, OFG requests that the Court endorse a proposed order that would formally establish a distributorship agreement between FlipFarm and OFG. The terms suggested in a proposed order reach a wide array of matters with headings that include "Supply Continuity," "Invoicing and Release of Goods," "Allocation of Supply-Constrained Products," "Most-Favored Pricing," "No Undercutting in Territory," "Price Ring-Fence During Pendency," "Defect, Failure, and Safety Disclosures," "Design-Change Notice," "Full Availability; Anti-Evasion," "Manuals, Technical Bulletins, and Pricing Information," and "Territory Referrals." None of these terms were ever agreed to by FlipFarm.

**DISCUSSION**

The Federal Rules of Civil Procedure contain a mechanism for temporary *ex parte* injunctive relief, but only when "immediate and irreparable injury, loss, or damage will result to the movant *before the adverse party can be heard in opposition*." Fed. R. Civ. P. 65(b)(1)(A) (emphasis added). The record did not justify the issuance of a restraining order *ex parte* given that FlipFarm had provided a 120-day notice of termination, OFG knew who FlipFarm's counsel was for notification purposes, and there was time available for FlipFarm to be heard on the propriety of injunctive relief.

As of this Order, FlipFarm has been heard in opposition. FlipFarm argues that preliminary injunctive relief should not be awarded in this case because OFG has not

demonstrated a substantial likelihood of success on the merits, an imminent injury that cannot be remedied through monetary damages, or a balance of equities favoring judicial intervention. Def. Opp'n at 1 (ECF No. 20). FlipFarm asserts that OFG is not attempting to preserve the status quo but rather to establish expansive and perpetual rights that were never part of any understanding between FlipFarm and Keith Butterfield. *Id.* at 1-2.

"To grant a preliminary injunction, a district court must find the following four elements satisfied: (1) a likelihood of success on the merits, (2) a likelihood of irreparable harm absent interim relief, (3) a balance of equities in the plaintiff's favor, and (4) service of the public interest." *Arborjet*, *Inc. v. Rainbow Treecare Sci. Advancements*, *Inc*., 794 F.3d 168, 171 (1st Cir. 2015). As the party seeking injunctive relief, OFG bears the burden of establishing that the factors weigh in its favor. *Nat'l Org. for Marriage v. Daluz*, 654 F.3d 115, 117, 119-20 (1st Cir. 2011).

"Likelihood of success is the main bearing wall of the four-factor framework." *Ross-Simons of Warwick*, *Inc. v. Baccarat*, *Inc*., 102 F.3d 12, 16 (1st Cir. 1996). On this issue "the district court is required only to make an estimation of likelihood of success and 'need not predict the eventual outcome on the merits with absolute assurance.'" *Corp. Techs*., *Inc. v. Harnett*, 731 F.3d 6, 10 (1st Cir. 2013) (quoting *Ross–Simons*, 102 F.3d at 16). Failure to demonstrate a likelihood of success on the merits is ordinarily fatal to a request for preliminary injunctive relief. *New Comm. Wireless Servs., Inc. v. SprintCom, Inc*., 287 F.3d 1, 9 (1st Cir. 2002). That is the case here.

Through this action, OFG seeks to make itself FlipFarm's exclusive distributor for the eastern United States seaboard *in perpetuity*, based on the oral agreements and course

of dealings that informed the relationship between FlipFarm and Keith Butterfield. Based on my preliminary review of the record, the oral understandings and course of dealings demonstrate that Keith Butterfield and FlipFarm enjoyed an indefinite, mutually beneficial commercial relationship involving the sale and servicing of FlipFarm products sold to identifiable oyster farmers operating in the eastern United States. That relationship was contractual but it was never reduced to a mutually agreeable written dealership or franchise agreement with the various rights that OFG wishes this Court to impose by means of a preliminary injunction. Nor can I find on the current record that the parties mutually agreed to the many terms recited by OFG in its proposed order.

OFG's more generalized contention that it is entitled to an exclusive dealership by operation of law also strikes me as a proposition that is not likely to succeed on the merits. My preliminary impression is that FlipFarm's dealings with OFG, such as they were, were in fact directed toward the person of Keith Butterfield, because of his special knowledge and capabilities. While OFG was the commercial vehicle through which Keith Butterfield carried out his end of the mutual enterprise, it does not strike me that OFG had any particular significance to FlipFarm, particularly not as an entity with which FlipFarm ever intended to form an enduring relationship in the absence of Keith Butterfield's participation.

Finally, the communications upon which OFG relies to support its claims tend to demonstrate that exclusive, assignable, and perpetual rights were never a subject of mutual agreement between FlipFarm and Keith. This undercuts the likelihood of success on a breach of contract claim. It also tends to undercut OFG's claim that FlipFarm perpetrated

a fraud on Keith or is subject to promissory estoppel. And assuming for the sake of argument that OFG's unjust enrichment claim could succeed, OFG has not suggested that such a claim could support the award of injunctive relief in addition to damages. *De Beers Consol. Mines v. United States*, 325 U.S. 212, 220 (1945) ("A preliminary injunction . . . grant[s] intermediate relief of the same character as that which may be granted finally."); *N. Border Pipeline Co. v. 86.72 Acres of Land*, 144 F.3d 469, 471 (7th Cir. 1998) ("A preliminary injunction may issue only when the moving party has a substantive entitlement to the relief sought.").

As for the statutory claims, it does not appear likely that the FlipFarm system qualifies as a "good" for purposes of the franchise law. Maine franchise law prohibits the termination of "a franchise relationship with a distributor or dealer" absent "good cause." 10 M.R.S. § 1363(3)(B)(3). It also significantly restricts what amounts to good cause. *Id.* § 1363(3)(C). However, the franchise law applies only to "equipment, machinery or appliances that use electricity, gas, wood, a petroleum product or a derivative of a petroleum product for operation." *Id.* § 1361(8). OFG's showing on the nature of the equipment does not persuasively suggest that the FlipFarm system qualifies as a good under the franchise law because it is not apparent that the system has any built-in system of operation powered by a fuel source.

Turning to the dealership statute claim, Maine law governing dealerships in farm machinery and certain other farm equipment requires a 120-day notice of termination, except in the case of certain eventualities not at issue here that allow for immediate termination. 10 M.R.S. § 1287(1). It appears that FlipFarm has satisfied the 120-day notice

requirement. The failure to provide "good cause" for termination of a dealership entitles the dealer to "recover losses and damages, together with the cost of the action and reasonable legal fees." *Id.* § 1294(2). Although injunctive relief is authorized under this law, *id.* § 1294(1), the existence of good cause for termination would run counter to such relief. Moreover, unlike the franchise law, this law does not significantly restrict the definition of good cause. Based on my review of the motion record, it appears likely that the relationship maintained by FlipFarm and OFG during Keith's life was one that reasonably would cease upon Keith's death. The relationship appears to have been entirely personal to Keith and his individual competencies. It therefore strikes me as more doubtful than likely that FlipFarm should be forced into a perpetual contract based on the mere fact that Keith operated through a solely-owned LLC that is capable of perpetual existence. In other words, it appears most likely that the non-availability of Keith as a partner is good cause for FlipFarm's termination of its relationship with OFG, subject to any economic reconciliation that may be required.

OFG's failure to demonstrate a likelihood of success on the merits is determinative of its Motion for Preliminary Injunction. Although I recognize that irreparable injury may befall OFG based on the denial of injunctive relief, given that OFG historically has only dealt in FlipFarm products, that does not suffice on its own to support a preliminary injunction since the likelihood of success is "the sine qua non of the preliminary injunction analysis." *Calvary Chapel Belfast v. Univ. of Maine Sys*., 180 F.4th 13, 35 (1st Cir. 2026).

## CONCLUSION

The Motion for Temporary Restraining Order and Preliminary Injunction filed by Plaintiff Ocean Farm Gear & Services LLC (ECF No. 3) is DENIED.

**SO ORDERED.**

Dated this 28th day of August, 2026.

/S/ Lance E. Walker
CHIEF U.S. DISTRICT JUDGE